UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CORNELL ELMS,

    Plaintiff

v.

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

_____/

Civil Action No. 16-10180

U.S. District Judge
HON. R. STEVEN WHALEN
U.S. Magistrate Judge

## **OPINION AND ORDER**

Plaintiff Cornell Elms ("Plaintiff") brings this action under 42 U.S.C. §405(g), challenging a final decision of Defendant Commissioner denying his application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act. For the reasons discussed below, Defendant's Motion for Summary Judgment [Docket #24] is DENIED. Plaintiff's Motion for Summary Judgment [Docket #17] is GRANTED to the extent that the case is remanded to the administrative level for further administrative proceedings.

**PROCEDURAL HISTORY**

On October 16, 2012, Plaintiff filed an applications for DIB and SSI, alleging an onset of disability date of June 11, 2012 (Tr. 166, 173).[1] After the initial denial of the claim, Plaintiff filed a request for an administrative hearing, held on February 26, 2014 in Detroit, Michigan before Administrative Law Judge ("ALJ") Michael R. Dunn (Tr. 29). Plaintiff, represented by Ronald D. Glotta, testified (Tr. 35-48), as did Vocational Expert ("VE") Don Harrison (Tr. 48-55). On August 13, 2014, ALJ Dunn found Plaintiff not disabled (Tr. 13-24). On November 25, 2015, the Appeals Council denied review and declined to add newer medical records to the transcript on the basis that they were irrelevant to whether Plaintiff was disabled on or before August 13, 2014 (Tr. 1-6).

Plaintiff filed for judicial review of the final decision in this Court on January 19, 2016.

**BACKGROUND FACTS**

Plaintiff, born December 24, 1966, was 47 when ALJ Dunn issued his decision (Tr. 24, 166). He completed two years of college and worked previously as a laborer and loss prevention specialist at a retail store (Tr. 205). His application for benefits states that he is disabled as a result of depression, headaches, and problems of the neck, back, and shoulder (Tr. 204).

**A. Plaintiff's Testimony**

Plaintiff offered the following testimony:

He lived in Taylor, Michigan with his sister (Tr. 35). He held a valid driver's license and drove about three days a week (Tr. 35). He was unable to drive more than 40 minutes

---

[1]An earlier application for disability benefits was denied on February 4, 2011 (Tr. 61-71).

at a time due to neck, back, and right shoulder pain (Tr. 35). He stood 5' 7" and weighed 175 pounds (Tr. 36). He was divorced with one child, 12 (Tr. 36).

Plaintiff became disabled on June 11, 2012 due to a motor vehicle accident (Tr. 37). As a result, his preexisting conditions of depression, headaches, and neck, back, and shoulder problems were exacerbated (Tr. 37). Due to the accident, he was diagnosed with a herniated disc (Tr. 38). He experienced low back pain radiating down to his right ankle (Tr. 39). His neck and shoulder pain were related (Tr. 39). Although Plaintiff experienced depression, he had not received treatment since before the accident (Tr. 40). His medication was limited to Vicodin, Xanax, and aspirin (Tr. 41). He denied current medication side effects (Tr. 41). He did not require the use of splints or braces but used a cane prescribed by a treating physician (Tr. 42). He denied the use of alcohol but admitted to using marijuana up to twice a week (Tr. 42).

Plaintiff was unable to walk for more than 15 steps before requiring a rest (Tr. 42-43). He relied on the cane to cope with shooting neck and right lower back pain (Tr. 43). He was unable to sit for more than 45 minutes at a time (Tr. 43). He did not experience problems with manipulative activities and was able to dress himself (Tr. 43). He was able to prepare simple meals, do laundry, and make short grocery trips but was unable to vacuum (Tr. 43-44). On a typical day, he would arise, perform exercises, and then watch television (Tr. 44).

In response to questioning by his attorney, Plaintiff noted that he had discussed obtaining a medical marijuana card with his treating physician (Tr. 44). Plaintiff reported hand numbness while he slept and "sometimes during the day" (Tr. 44). He attended rehabilitation after the accident but did not have insurance coverage for either additional rehabilitation or mental health treatment (Tr. 45). He experienced headaches one to three times a week at which time he would lie down until the headache subsided (Tr. 65).

B.  **Medical Evidence**

1.  **Records Related to Plaintiff's Treatment**

On June 11, 2012, Plaintiff received emergency treatment after his car was struck while he was waiting at a traffic light (Tr. 248-249). Plaintiff reported moderate pain and a headache (Tr. 248). He appeared fully oriented with a full range of motion (Tr. 248-250). A CT of the brain was negative for abnormalities other than a soft tissue swelling of the scalp (Tr. 252, 375, 476). A CT of the cervical spine showed a disc herniation at C5-C6 (Tr. 254). Imaging studies of the lumbar spine, pelvis, and thoracic spine were essentially unremarkable (Tr. 256-258). Plaintiff was discharged the same day in satisfactory condition (Tr. 259).

Rehabilitation records from the following month note that Plaintiff received pool therapy (Tr. 266). Plaintiff reported intermittent right arm and hand pain (Tr. 269). The same month, Donald L. Newman, M.D. noted Plaintiff's report of cervical and lumbar spine stiffness and bilateral hand numbness (Tr. 350, 395). In August, 2012, Plaintiff reported good results from heat therapy and less frequent pain (Tr. 304, 306). He was able to walk normally without the use of a cane and appeared comfortable sitting (Tr. 309). In September, 2012, Plaintiff reported lower back pain and "numbness and pain in both hands" (Tr. 292). He reported to Dr. Newman that therapy was not helping (Tr. 349). Dr. Newman re-prescribed Vicodin (Tr. 349). In October and November, 2012, Plaintiff reported persistent neck and low back pain (Tr. 273, 275, 282, 285, 394, 466). In November, 2012, Dr. Newman observed a reduced bilateral hand grip (Tr. 347, 393). Plaintiff reported using a heating pad for pain (Tr. 345).

Dr. Newman's June, 2013 records state that Plaintiff's activities had decreased since the accident one year earlier due to stiffness and tightness of the cervical and lumbar spine (Tr. 388). September, 2013 records by Dr. Newman state that Plaintiff exhibited a reduced

range of cervical spine motion and radiating lumbar spine pain (Tr. 387). Dr. Newman's December, 2013 records state that the "auto accident case settled" but that Plaintiff was awaiting a hearing in the claim for DIB benefits (Tr. 386). Dr. Newman's February, 2014 treating records state that Plaintiff experienced arm and hand numbness with constant lumbar spine pain (Tr. 385, 456). The same month, Dr. Newman testified under oath that before the June, 2012 accident, Plaintiff experienced difficulty standing greater than 45 minutes or lifting/pulling greater than 35 pounds (Tr. 407). Dr. Newman noted that Plaintiff reported severe headaches occurring two to three times a day and lasting for half an hour (Tr. 409). Dr. Newman noted that the headaches were consistent with diagnosis of disc herniation at C5-C6 (Tr. 410). He found that Plaintiff's "ability to cope has been severely compromised due to . . . chronic pain and the use of pain medication" (Tr. 410). He found that Plaintiff would have difficulty working more than two to four hours a day, even with a sit/stand option (Tr. 410). Dr. Newman noted that Plaintiff would require work where he could "actually . . . lie down to unload his spine and head and neck" (Tr. 410). Dr. Newman's May, 2014 state that Plaintiff reported constant cervical pain, stiffness, and burning (Tr. 502).

## 2. Non-Treating Records

In October, 2012, Stanley S. Lee, M.D. performed a one-time examination relating to the accident claim, noting Plaintiff's report of neck, upper back, middle back, lower back, shoulder, and upper extremity pain (Tr. 497-501). Dr. Lee observed 5/5 hip strength, a full range of spinal motion, normal muscle tone, and a normal gait (Tr. 499). He concluded that Plaintiff experienced only a "minor soft tissue strain" and did not require "any further medical treatment, household replacement services, attendant care, activity or work restrictions" (Tr. 500).

In January, 2013, Hugh Bray, Ph.D. performed a consultative psychological examination on behalf of the SSA, noting Plaintiff's report of a 2009 diagnosis of depression by a psychiatrist at the Detroit Medical Center ("DMC") (Tr. 353). Plaintiff reported that physical limitations, financial constraints, and divorce contributed to the depression (Tr. 353). He denied current mental health therapy (Tr. 354).

Dr. Bray observed "pain behavior" (Tr. 354). Plaintiff reported fair relationships with friends, one neighbor, and his employer (Tr. 355). He indicated that he was able to perform tasks of daily living "slowly due to pain or mobility issues" (Tr. 355). Dr. Bray noted that Plaintiff used a cane (Tr. 355). Plaintiff exhibited adequate contact with reality and "logical, organized and goal directed" speech with low self esteem (Tr. 356). He displayed "average" "concentration, attention, persistence and effort" (Tr. 357). Dr. Bray found mild limitation in concentration and mild to moderate ability to "withstand stress and pressure associated with day to day work activities" (Tr. 358).

The same day, Jack Solomon, M.D. performed a consultative physical examination on behalf of the SSA, noting a history of back and neck pain since the June, 2012 accident (Tr. 360). Plaintiff reported that he currently took Flexeril and Vicodin (Tr. 361). Dr. Solomon noted that Plaintiff was using a cane and was "in obvious pain" (Tr. 361). Straight leg raising test was positive bilaterally (Tr. 361). Dr. Solomon concluded that Plaintiff "probably has lumbar radiculopathy" and "may have cervical radiculopathy" resulting in right hand weakness (Tr. 361, 364). He concluded that Plaintiff required the use of a cane (Tr. 363).

In February, 2013, Rose Moten, Ph.D. performed a non-examining review of the treating and consultative records on behalf of the SSA, finding that Plaintiff experienced mild limitation in activities of daily living and moderate limitation in social functioning and

concentration, persistence, or pace (Tr. 87-88). The following day, Muhammad Mian, M.D. performed a non-examining review of the records pertaining to Plaintiff's physical conditions, finding that he could lift 20 pounds occasionally and 10 frequently; sit, stand, or walk for six hours in an eight-hour workday; and push and pull without limitation (Tr. 90). Dr. Mian restricted Plaintiff to occasional postural activities (Tr. 90). He limited Plaintiff to occasional reaching with the right arm (Tr. 91).

### C. Vocational Expert Testimony

VE Don Harrison classified Plaintiff's past work as a loader as unskilled and medium and work as a security guard, semiskilled and exertionally light (medium as performed)[2] (Tr. 241). The ALJ posed the following question, taking into account Plaintiff's age, educational level, and past work:

> Assume the worker has the residual functional capacity to perform light work as defined in the regulations. The worker could do not overhead [reaching] with his right dominant upper extremity. And can only understand, remember and carry out simple, repetitive tasks with occasional interaction with co-workers and the general public. Within the parameters of that hypothetical, could such a worker perform any of the claimant's prior work as you have described it? (Tr. 50).

The VE testified that the above-described individual would be unable to perform Plaintiff's past relevant work but could perform the exertionally light work of a small products assembler (2,000 positions in southeastern Michigan); light fixture inspector (2,500); and hand packer (1,800) (Tr. 51).

---

[2]

20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds.

The ALJ then posed an entirely new set of restrictions:

> Lifting and carrying up to 20 pounds occasionally, 10 pounds frequently in light work. I want you to assume our worker's going to require a sit/stand option every 30 minutes provided that the exercise of the option does not cause the worker to be off task more than 10 percent of the day. The work also has to accommodate the use of a handheld assistive device at all times when walking but not required when standing at the workstation, and the contra-lateral upper extremity may be used to lift and carry up to the exertional limitations. There should be no overhead reaching with the right upper extremity. There should be occasional – there can be up to occasional reaching in all other directions with the right upper extremity. There can be frequent handling and fingering with the right upper extremity. Our worker is limited to occasional climbing of ramps and stairs, no climbing of ladders or scaffolds. Can occasionally balance, stoop and crouch, should never be required to kneel or crawl. The worker should not be exposed to unprotected heights, must avoid exposure to hazardous machinery. The work should not require commercial driving. Our worker must avoid concentrated exposure to vibration. The work should be limited to simple, routine and repetitive unskilled tasks performed a SVP 1 or 2, as defined in the *Dictionary of Occupational Titles* ["*DOT*"], and must be free of fast paced production requirements. There should be no more than occasional interaction with supervisors and co-workers, and no interaction with the public. Within those parameters, could such a worker do the claimant's past work either as performed, or as customarily performed in the economy? (Tr. 51-53).

The VE testified that the second set of restrictions would preclude the past relevant work and reduce the small products assembler job numbers to 750; light fixture inspector, 1000; and packer, 750 (Tr. 53). He added that if the second set of restriction were amended to limit the individual to sedentary work, he could perform the jobs of order clerk (1,000); optical inspector (1,000); and surveillance monitor (1,200) (Tr. 53-54).

The VE testified that if the same individual were off task more than 20 percent of the day due to "the distracting nature of pain, the need to frequently change positions, [and] need to occasionally take breaks in addition to regularly scheduled breaks," or, were required to miss three or more days of work each month, all competitive work would be precluded (Tr. 54). The VE stated that his testimony was

consistent with the information found in the *DOT* except for the testimony regarding the sit/stand option, need to be off-task, and absenteeism which was based on his own professional experience (Tr. 54).

**D. The ALJ's Decision**

ALJ Dunn noted that in an earlier application for benefits, Plaintiff was found not disabled on or before February 4, 2011 (Tr. 13). In contrast to the earlier determination wherein Plaintiff was found to be capable of exertionally light work, ALJ Dunn found "new and material evidence" created subsequent to February 4, 2011 determination supported the finding that Plaintiff was limited to sedentary work (Tr. 13-14, 61-71)(*citing Drummond v. CSS,* 126 F. 3d 837 (6th Cir. 1997); SSA Administrative Ruling ("AR") 98-3(6).

ALJ Dunn then determined that Plaintiff experienced the severe impairments of "status post right rotator cuff surgery, degenerative disc disease of the cervical spine with moderate spinal canal stenosis, degenerative disc disease of the lumbar spine with radiculopathy, headaches, depressive disorder, and anxiety disorder" but that none of the conditions met or medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 16-17). The ALJ found that Plaintiff experienced mild limitation in activities of daily living and moderate limitation in social functioning and concentration, persistence, or pace (Tr. 17-18). He found that Plaintiff retained the residual functional capacity ("RFC") for sedentary work with the following additional restrictions:

> The claimant requires the option to change position from sitting to standing and vice versa every 30 minutes; a hand held assistive device at all times when walking but not required when standing at the work station; and the contralateral upper extremity may be used to lift and carry up to the exertional limitations. The claimant can reach occasionally with his right upper

extremity, but can never reach overhead with the right upper extremity. He can frequently handle and finger with his right upper extremity. He also can only occasionally balance, stoop, crouch, and climb ramps and stairs. He can never kneel, crawl or climb ladders, ropes or scaffolds. Further he can never be around unprotected heights and must avoid hazardous machinery, commercial driving, and concentrated exposure to vibration. Mentally, the claimant is limited to simple, routine and repetitive unskilled tasks performed at an SVP 1or 2 [unskilled work] as defined in the DOT, and that are free of fast paced production requirements. Finally, he can only occasionally interact with supervisors and coworkers and can never interact with the public (Tr. 18-19).

Citing the VE's testimony, the ALJ found that Plaintiff could perform the sedentary, unskilled work of an order clerk, optical inspector, and surveillance system monitor (Tr. 23).

The ALJ discounted Plaintiff's allegations of limitation to extent that he claimed a level of impairment exceeding the restrictions set forth in the RFC (Tr. 20). The ALJ noted that Plaintiff's daily activities included "housekeeping, laundry, cooking, shopping, driving, watching television, reading, playing games, taking walks and attending church" (Tr. 20). The ALJ noted that Plaintiff's hearing testimony reflected "average concentration, attention, persistence, and effort" (Tr. 20).

The ALJ declined to accord controlling weight to Dr. Newman's opinion that Plaintiff would experience difficulty working more than four hours a day, needed to lie down periodically, and experienced disabling depression (Tr. 21). The ALJ found that Dr. Newman's opinion was unsupported by "objective clinical and diagnostic abnormalities . . ." (Tr. 21). The ALJ gave "significant weight" to the Dr. Solomon's consultative findings and "great weight" to Bray's psychological consultative findings (Tr. 22).

**STANDARD OF REVIEW**

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more

than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the

residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## ANALYSIS

### A. The Analysis of the Medical Opinions

Plaintiff argues that the ALJ erred by discounting Dr. Newman's February, 2014 opinion of disabling limitation. *Plaintiff's Brief,* 7-13 (*citing* Tr. 20-21, 410), *Docket #17,* Pg ID 637. Plaintiff contends that Dr. Newman's findings of limitation are consistent with Dr. Solomon's one-time consultative conclusions. *Id.* at 9.

"[I]f the opinion of the claimant's treating physician is supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, it must be given controlling weight." *Hensley v. Astrue*, 573 F.3d 263, 266 (6th Cir. 2009)(internal quotation marks omitted)(*citing Wilson v. CSS*, 378 F.3d 541, 544 (6th Cir. 2004); 20 C.F.R. § 404.1527(c)(2)). However, in the presence of contradicting substantial evidence, the ALJ may reject all or a portion of the treating source's findings, *Warner v. Commissioner of Social Sec.*, 375 F.3d 387, 391-392 (6th Cir. 2004), provided that he supplies "good reasons" for doing so. *Wilson*, at 547; 20 C.F.R. § 404.1527(c)(2)); SSR 96–2p, 1996 WL 374188, *5 (1996). In explaining the reasons for giving less than controlling weight to the treating physician's opinion, the ALJ must consider (1) "the length of the ... relationship" (2) "frequency of examination," (3) "nature and extent of the treatment," (4) the "supportability of the opinion," (5) the "consistency ... with the record as a whole," and, (6) "the specialization of the treating source." *Wilson*, at 544.

The ALJ discounted Dr. Newman's findings on the following basis:

> [T]he doctor opined about the claimant's depression, but his office visit notes do not include any recommendation for mental health treatment, a mental status examination, or comment about the claimant's depression. There also is no frequent treatment or emergency or urgent care treatment that would support the severity of pain reported. The claimant still drives and sustains all his own daily activities, which is inconsistent with only being able to sit, stand and walk for a combination of two to four hours a day. . . . [T]he doctor's own reports fails to reveal the type of significant objective clinical and diagnostic abnormalities one would expect if the claimant were in fact as disabled as alleged. The doctor addressed this only by citing to reduced range of motion and acknowledging that the cervical abnormality would cause pain (Tr. 21).

The ALJ also noted that Dr. Newman failed to provide support for the conclusion that Plaintiff was incapable of even a limited range of sedentary work as set forth in the RFC (Tr. 21). The ALJ assigned Dr. Newman's opinion "some" weight on the basis that it lacked "medical support" (Tr. 21).

In contrast, the ALJ accorded "significant" weight to Dr. Solomon's one-time consultative examination conclusions (Tr. 22). The ALJ cited Dr. Solomon's finding of probable lumbar and cervical radiculopathy and "some need to use a cane" (Tr. 22 *citing* 363).

As an initial matter, the Court notes that ALJ Dunn crafted a detailed RFC limiting Plaintiff to a significantly reduced range of sedentary work (Tr. 18-19). However, the purported reasons for rejecting Dr. Newman's finding that Plaintiff would be incapable of working more than two to four hours a day are not wholly satisfactory. First, the June, 2012 imaging studies showing a disc herniation at C5-C6 stands at odds with the ALJ's conclusion that Dr. Newman's finding of upper extremity limitations was unsupported by the diagnostic studies (Tr. 21, 254). Dr. Newman noted that evidence of the cervical disc herniation was consistent with the complaints of upper extremity weakness and severe cervical spine pain (Tr. 409).

Second, Dr. Newman's finding of significant range of motion limitations also constitutes "clinical evidence" in support of his disability opinion. "'Objective medical evidence'" includes "'evidence obtained from the application of medically acceptable clinical . . . diagnostic techniques . . . such as evidence of reduced joint motion . . .'" *Wilson v. Astrue*, 2011 WL 4434602, at *6–7 (E.D.Mich. September 23, 2011)(Ludington, J.)(*citing* 20 C.F.R. § 404.1529(a)). The clinical diagnoses are "'a useful indicator . . . in making reasonable conclusions about the intensity and persistence of [the] symptoms and the effect those symptoms, such as pain, may have on [the] ability to work.'" *Id.* at *7. "[C]linical observations are not 'red herrings' - they are relevant, objective medical evidence." *Id.*

Third, while the ALJ accorded Dr. Newman's treating opinion limited weight in favor of the "significant" weight accorded Dr. Solomon's consultative opinion, the treating and consultative source opinions do not significantly differ. Both sources found notable range of motion limitations (Tr. 361, 363, 408-409). Despite the purportedly significant weight accorded to Dr. Solomon's opinion, the RFC contains an inexplicably "watered down" version of Dr. Solomon's findings. While Dr. Solomon found that Plaintiff "would fall" without the use of a cane, the RFC includes the need to hold an "assistive device at all times when walking," but that a cane was not required while standing (Tr. 18). However, Dr. Solomon's findings cannot be read to state that Plaintiff did not also require the use of a cane while standing. The need to hold a cane with one hand while working in the standing position would render Plaintiff, at least for part of the workday, unable to perform two-handed work. It is long recognized that the limitation to "one-handed" work significantly reduces the sedentary job base. SSR 96-9p, 1996 WL 374185,*7 (June 2, 1996) ("occupational base for an individual who must use such a device for balance because of significant involvement of both lower extremities ... may be significantly eroded").

To be sure, substantial evidence found elsewhere in the record might support the finding that Plaintiff did not require the use of a can while merely standing. Defendant correctly notes that the ALJ "'has the power and discretion to weigh all of the evidence and to resolve the significant conflicts in the administrative record . . .'" *Defendant's Brief,* 13, *Docket #24,* Pg ID 710 (*citing Workman v. Comm'r of Soc. Sec.*, 105 F. App'x 794, 801, 2004 WL 1745782 (6th Cir. July 29, 2004)). However, the finding that Plaintiff required a cane while walking but not standing is critical to determination of whether he is capable of even a limited range of sedentary work. At a minimum, the ALJ should provide a rational for this portion of his determination.

In short, the ALJ's erroneous finding that Dr. Newman's opinion was not supported by the objective medical evidence and, the failure to provide support for the finding that Plaintiff did not require the use of cane while standing both require a remand for further proceedings.

### B. The Newly Submitted Medical Evidence

Plaintiff also requests that the Court consider material submitted for Appeals Council review subsequent to the ALJ Dunn's August 13, 2014 opinion. *Plaintiff's Brief* at 13-15, 18-19. He contends that the Appeals Council improperly declined to amend the administrative record with December, 2014 treating records and a February 16, 2015 assessment by Richard Krugel, M.D. *Id., Plaintiff's Exhibits B-C,* as well as Ephraim M. Zinberg, M.D.'s February 10, 2015 Residual Functional Capacity Assessment. *Id., Plaintiff's Exhibit D.* He also argues that while the ALJ cited Dr. Newman's February, 2014 deposition, the present transcript does not contain the deposition and thus, while the ALJ cited it, he failed to make it part of the record. *Id.*

As an initial matter, Plaintiff's claim that the ALJ referenced a deposition not made part of the record is without merit. The ALJ noted that Plaintiff provided only excerpts of the deposition (Tr. 20, 406-411). The ALJ also acknowledged that the deposition excerpts provided by Plaintiff reflected Dr. Newman's treating opinion (Tr. 20-21). Plaintiff's claim that the ALJ relied on portions of the deposition not found in the record is incorrect.

Moreover, Plaintiff has made no showing that the deposition as a whole contains information which would be likely to change the administrative decision. Under the sixth sentence of § 405(g), a court "may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding ..." To satisfy the "materiality" requirement for a "Sentence Six" remand, a claimant "must demonstrate that there was a reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence" *Sizemore v. Secretary of Health & Human Services*, 865 F.2d 709, 711 (6th Cir. 1988). Plaintiff has not shown that the deposition as a whole is "material" to the ALJ's original determination.

For differing reasons, neither Dr. Krugel's nor Dr. Zinberg's February, 2015 assessment support a remand for consideration of additional evidence. These opinions postdate the ALJ's decision by six months. Plaintiff's condition subsequent to the date of the ALJ's decision is intrinsically irrelevant. *Sizemore*, *supra,* 865 F.2d at 712. Where a claimant believe that his condition has worsened subsequent to the administrative determination, the remedy is to make a new application for benefits. *Id.*

Accordingly, the Court finds that a remand for consideration of the newer material not meet the requirements of the sixth sentence of § 405(g). However, because remand is appropriate for the reasons set forth in Section A., *above,* Plaintiff is not barred from presenting the newer evidence to the Administrative Law Judge upon remand. *See Huber v. Commissioner of Social Security*, 2009 WL 111738, *11 (E.D. Mich. January 15, 2009)(claimant not barred from presented newer material upon remand for further proceedings under the fourth sentence of § 405(g); *Faucher v. Secretary of Health and Human Services*, 17 F.3d 171 (6th Cir. 1994)(same).

## CONCLUSION

For the reasons stated above, Defendant's Motion for Remand [Docket #24] is DENIED. Plaintiff's Motion for Summary Judgment [Docket #17] is GRANTED to the extent that the case is remanded to the administrative level for further administrative proceedings consistent with this Opinion and Order.

IT IS SO ORDERED.

s/ R. Steven Whalen
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Dated: September 18, 2017

### CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was sent to parties of record on September 18, 2017, electronically and/or by U.S. mail.

s/Carolyn M. Ciesla
Case Manager to the
Honorable R. Steven Whalen